| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>DISTRICT OF NEW JERSEY<br><br>**BECKER LLC**<br>Eisenhower Plaza II<br>354 Eisenhower Parkway, Suite 1500<br>Livingston, New Jersey 07039<br>(973) 422-1100<br>ALLEN J. UNDERWOOD II, ESQ.<br>E-mail address: ajunderwood@becker.legal<br>*Attorneys for Judgment Creditor Janis Lee Doran* | |
| In re:<br><br>KURT N. KVIST,<br><br>                          Debtor. | Case No. 19-21587-MBK<br><br>Chapter 13<br><br>Judge: Hon. Michael B. Kaplan |

**JUDGMENT CREDITOR JANIS LEE DORAN'S OBJECTION TO THE CONTINUATION OF THE AUTOMATIC STAY ON BAD FAITH GROUNDS AND FOR DISMISSAL UNDER 11 USC § 109(e) AND § 1307(c).**

TO:    THE HONORABLE MICHAEL B. KAPLAN,
        UNITED STATES BANKRUPTCY JUDGE:

Creditor, Janis Lee Doran a/k/a Janis L. Doran ("Doran"), by and through her counsel, Becker LLC, hereby objects to and seeks denial of Debtor's request for an extension of the automatic stay in this, the Debtors third Chapter 13 filing within one year. Moreover Doran requests dismissal of Debtors case pursuant to 11 USC § 109(e) and 1307(c). Doran respectfully represents as follows:

## BACKGROUND

1.    On or about June 8, 2018, the state court awarded Doran a Final Judgement against the Debtor and Debtor's business, Serious Cabinetry, Inc., jointly and severally, in the

amount of $154,577.24 ("Final Judgment"). Doran is entitled to additional post-judgment interest between the date of the Final Judgment and the date of the Debtor's instant bankruptcy filing. The Final Judgment was the product of a finding of consumer fraud – a fraud which factually left Doran with an incomplete home – and in fact an unsaleable home due to the fact that a staircase which Debtor and his business removed was never replaced, causing the home not to meet building codes, and causing Doran great difficulty.

2. Doran recorded her Final Judgment in Trenton as a statewide lien on all of Debtor's real property prior to Debtor's instant bankruptcy filing. *See, Id.*

3. On or about September 19, 2018, a Writ of Execution was entered against the Debtor and Serious on Doran's behalf, levying against all personal property, and any and all bank accounts of the Debtor and Serious.

4. Prior to the instant bankruptcy proceeding, Debtor previously filed for bankruptcy at least four times. Debtor first filed a petition for bankruptcy relief under Chapter 13 in October of 2009 under Case No. 09-37840 (KCF). Thereafter, in May of 2011, Debtor filed his second bankruptcy case – a voluntary Chapter 7 petition for relief under Case No. 11-24939 (KCF). Thereafter, according to Debtor's Petition, Debtor also filed a case on August 15, 2011.

5. On October 24, 2018, Debtor filed with this Court a personal voluntary petition under Chapter 13 of the United States Bankruptcy Code in the United States Bankruptcy Court, District of New Jersey under Case No. 18-31149 (KCF). Said bankruptcy was dismissed.

6. On May 8, 2019, Doran obtained her default judgment of nondischargeability against the Debtor before this Court, under case no. 19-01058 (KCF).

7. On May 17, 2019, Debtor filed with this Court a personal voluntary petition under Chapter 13 of the United States Bankruptcy Code in the United States Bankruptcy Court, District of New Jersey under Case No. 19-20040 (KCF). Said bankruptcy was dismissed

8. On June 10, 2019, Debtor filed the instant Petition, which is the Debtor's third Chapter 13 Bankruptcy filing within one year.

9. On Debtor's Petition, Debtor scheduled two real properties on Schedule "A/B": (1) 77 West Street, Colonia, NJ 07067 ("Colonia Property") – upon which Debtor scheduled a purported fair market value of $350,000; and (2) 19 Grove Avenue, South Amboy, NJ 08879, ("Amboy Property") upon which Debtor scheduled a purported fair market value of $200,000.

10. Debtor allegedly resides at and shares an interest in the Colonia Property with another non-debtor party – based upon prior Bankruptcy filings this would appear to be Debtor's wife.

11. Debtor allegedly shares an interest in the Amboy Property with a non-debtor party, believed to be his sister. Debtor and his sister appear to hold the Amboy Property as joint tenants, with a life estate to their father.

12. Doran disputes both the Debtor's scheduled valuations generally as to each of the Colonia and Amboy properties, and the valuation as to each particular portion of the properties held by Debtor.

13. Doran will be objecting to Debtor's proposed Plan.

**Debtor's Third Chapter 13 Filing Within One Year Is Not In Good Faith as to Doran, and the Automatic Stay Should not be Extended as to Doran's Claims.**

14. For the purposes of the Debtor's Motion to Invoke or Extend the Automatic Stay, as stated, this is the Debtor's third Chapter 13 filing within one year. Debtor is subject to the

3

presumption of bad faith as to this third filing, and therefore should not be entitled to the protections of the automatic stay. 11 U.S.C. § 362(c)(4). Debtor must present clear and convincing evidence that his most recent bankruptcy is filed in good faith. *Id.*

15. Debtors filed Response (Docket Entry 23 herein), although a certification, fails to set forth clear and convincing evidence of good faith to rebut the presumption of bad faith.

16. Under 11 U.S.C. § 1307(c), a Chapter 13 petition may be dismissed "for cause." *In re Lilley,* 91 F.3d 491, 496 (3d Cir.1996). Even though § 1307(c) lists eleven grounds for dismissal, courts are not confined to the grounds enumerated under this section, and may consider the debtor's failure to comply with other sections of the Code in deciding whether there is "cause" for a dismissal of a Chapter 13 case. *In re Scotto-DiClemente,* 459 B.R. 558, 561 (2011) citing *Lilley,* 91 F.3d at 494.

17. "Good faith" is not defined in the Code. *Id.* Courts look at the totality of the circumstances when making such a determination as to good faith. *Id citing In re Goddard,* 212 B.R. 233, 238 (D.N.J.1997). Factors the court may consider are: (1) the nature of the debt, (2) the timing of the petition, (3) how the debt arose, (4) the debtor's motivation in filing his petition, (5) how the debtor's actions affected creditors, (6) the debtor's treatment of creditors both before and after the petition was filed, and (7) whether the debtor has been forthcoming with the bankruptcy court and the creditors. *Id citing In re Myers,* 491 F.3d 120, 125 (3d Cir.2007) (citing *In re Lilley,* 91 F.3d at 496). The Court may consider all relevant issues - no one factor is controlling. *Id citing In re Goddard,* 212 B.R. at 238.

18. In addition to the seven factors previously listed under *Lilley,* as to good faith with reference to lien avoidance and cram down, in *Scotto-DiClemente* this Court also considered whether (1) "the debtor[ ] ... [has] a need for bankruptcy other than lien avoidance;

4

(2) whether [the] debtor[ ] acted equitably in proposing the plan; (3) whether [the] debtor[ ] ... [is] devoting ... [his] income to the plan; and (4) whether the debtor[ ] used serial filings to avoid paying their creditors." *In re Scotto-DiClemente quoting Okosisi*, 451 B.R. at 102–04.

19.     In short, the Debtor seeks extension of the stay as to all creditors, but does not address why the stay should be extended as to Doran in particular. The Debtor references an unfortunate car accident, but does not address the fact that Doran's claim is nondischargeable, and that his real intent is to preserve equity in two pieces of real property, while foiling honest collection efforts of Doran, through serial filings. The circumstances in this third filing are in fact no different than those presented in Debtor's first 2018 filing – the main difference is the additional cost and delay foisted upon Doran – and the fact that Doran's judgment is now nondischargeable.

20.     Debtor's Plan as proposed is not equitable, and Debtor clearly has employed serial filings to avoid paying creditors.

21.     Debtor does not suggest that equity in either real property, or income from the Amboy Property, will be employed to pay creditors. As such, the single conclusion that this Court may draw is that the properties are not necessary for an effective Chapter 13 Plan, and that Debtors filings are a bad faith effort to delay a creditor who otherwise holds a nondischargeable judgment.

22.     Given the above, the stay should not be extended as to Doran.

**Debtor is ineligible to be a debtor under Section 109(e)**.

23.     Debtor is ineligible to be a debtor under Section 109(e). Pursuant to the below analysis, Debtors unsecured debts as of the Petition Date exceed the statutory limit for Chapter 13.

5

24. Debtor's Chapter 13 Petition schedules unsecured claims totaling $134,528.00.

25. The non-governmental claims bar date in this case has now passed (the government bar date remains pending). The following proofs of claim were timely filed:

(7) Yoerys and Henry Fraga $216,609.00 (holds a nondischargability judgment)
(6) Federal Home Loan Mortgage Corp. c/o Select Portfolio Servicing, Inc. $171,322.23 (secured mortgage holder)
(5) Janis Lee Doran $154,577.24 (holds a nondischargeability judgment)
(4) Citibank, N.A. $1,605.33 (unsecured claim)
(3) PSE&G $1,443.65 (unsecured claim)
(2) Americredit Financial Services - $16,198.05 (secured by vehicle)
(1) Citizens Bank N.A. $4,467.20 (unsecured claim)

26. Not including the presumably secured claims (6) Federal Home Loan and (2) Americredit, filed claims that are or may be characterized as unsecured in whole or part total $378,702.42.

27. This number, as to filed claims alone, is below the unsecured debt limit (as of the upward revision on April 1, 2019) of $419,275.00. 11 USC § 109(e).

28. It is notable that all of the above filed claims are more than likely noncontingent, liquidated and beyond dispute. In particular, (7) Fraga and (5) Doran each respectively hold nondischargeable judgments rendered by this Court. Despite the fact that the "filed proof of claim" tally is below the statutory limit, Section 109(e) is worded at to unsecured claims as of the Petition Date. As such, even creditors who did not file proofs of claim should be included in the debt amount calculation as of the Petition Date. This is particularly so, because Debtor is a 3 time serial filer. As is noted in parenthesis below, some of these creditors actually filed claims in the prior 2018 Chapter 13 proceeding, within the last year. Who is to say whether they knew whether or not they needed to file new proofs of claim in successive cases, or whether they simply grew weary of filing claims given the Debtors dismissal and serial filing history. In any

event, the following claims scheduled by Debtor on the Petition as Unsecured Claims should be included in the tally of Petition Date unsecured debt for reference to Section 109(e):

> Stylecraft Corporation - $44,775.00
> JFK Hartwyck at Oaktree - $2,167.00 (filed claim for $2,111,00 in 2018 Ch. 13)
> Hugh and Vicky Harris – 2,500.00
> GWS Contractors – 4,144.00
> Gary Cantagallo - $25,000.00
> Five Star LLC - $10,000.00
> Citicards - $3,181.00
> Avaya Halpern - $40,000.00 (filed claim for $40,000.00 in 2018 Ch. 13)

29. Adding the above amounts scheduled by Debtor on the Petition, to the timely filed general unsecured claims to date in this case, would indicate that Debtor had at least $510,469.42 in unsecured debt as of the Petition Date – well over he Section 109(e) unsecured debt limit. Moreover, Debtor's petition listed multiple medical creditors with claims each respectively valued at $0. None of these medical creditors filed claims – though one suspects that they may have had significant claims given Debtors description of his injuries.

30. Again, under the above analysis, Debtor had at least $510,469.42 in unsecured debt as of the Petition Date, about $90,000.00 above the Section 109(e) limit.

31. As described in this Court's decision in *In re Scotto-DiClemente*, 459 B.R. 558 (2011), Section 109(e) speaks in terms of "debts" which is defined under 11 U.S.C. § 101(12) as "liability on a claim." 11 U.S.C. § 101(5) defines "claim" to mean:

> (A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or
> (B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

32. Given this broad definition of "debt," it may be thatwe are splitting unnecessary hairs as to whether or not the Fraga and Doran claims are characterized as secured or unsecured.

7

33. Although Debtor scheduled Doran and Fraga (holders of nondischargeable judgments) as secured, and although at least Doran filed a secured proof of claim, the extent to which they are secured is in part a function of whether their judgment liens are avoidable, whether their judgment liens can be crammed down, and what in fact is the true value of the equity in each of the Debtor's 2 properties.

34. Debtors present proposed Plan (to which Doran will be objecting) apparently seeks to cram down both the Fraga and Doran claims. Debtor success in this regard could render the bulk of both claims unsecured, and the Debtor well over the Section 109(e) limit.

35. Nevertheless, it appears that Debtor cannot meet the requirements of Section 1325(a)(5).

36. Moreover, as to Fraga and Doran claims in terms of a Section 109(e) calculation, Doran posits that the secured – unsecured distinction may be immaterial. The Fraga and Doran claims are something more than secured or unsecured – they are both ultimately nondischargeable (both are already the subject of nondischargeability judgments in one of the prior serial Chapter 13's). In effect, the Fraga and Doran claims are the ultimate "in personam" claims. Whether or not they are or can be secured by assets, they always run as in personam claim against the Debtor. Again, whether or not Debtor can effect lien avoidance or cramdown, because the claims are nondischargeable, at bare minimum, any unsatisfied balance always survives a discharge, at a minimum as a continuing undischarged judgment against the Debtor.

## CONCLUSION

37. In sum, whether or not the Fraga and Doran claims are actually secured as judgment liens, for the purposes of Section 109(e), they should be considered unsecured, thus rendering Debtor over the Chapter 13 debt limit and requiring dismissal or conversion to Chapter

8

11. The Debtor's failure to qualify for relief under Chapter 13 of the Code compels the Court to dismiss the Debtor's case under § 1307(c).

          Respectfully submitted,

          **BECKER LLC**
          *Attorneys for Creditor,*
          *Janis Lee Doran*

          By: /s/ Allen J. Underwood II
              ALLEN J. UNDERWOOD II, ESQ.
              Eisenhower Plaza II
              354 Eisenhower Parkway, Suite 1500
              Livingston, New Jersey 07039
              Phone: (973) 422-1100
              Facsimile: (973) 422-9122
              ajunderwood@becker.legal

Dated: August 22, 2019